IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
CIVIL ACTION NO.: 2:20-cv-66

| | |
|---|---|
| PENN NATIONAL MUTUAL CASUALTY INSURANCE COMPANY a/s/o EXOTIC IMPORTS, INC.<br><br>Plaintiff,<br><br>v.<br><br>VIRGINIA ELECTRIC AND POWER COMPANY d/b/a DOMINION NORTH CAROLINA POWER (A WHOLLY OWNED SUBSIDIRAY OF DOMINION ENERGY, INC.)<br><br>Defendant. | **COMPLAINT** |

NOW COMES Plaintiff, Pennsylvania National Mutual Casualty Insurance Company ("Penn National" or "PNI") a/s/o Exotic Imports, Inc., by and through its undersigned counsel, and hereby complains of Defendant as follows:

**PARTIES**

1. The Plaintiff is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 2 N. Second Street, Harrisburg, PA, 17101, which, at all times relevant hereto, was duly authorized to engage in the business of insurance in North Carolina.

2. At all times relevant hereto, PNI provided property and other insurance to Exotic Imports, Inc. ("Exotic Imports" or "Subrogor"), in connection with its property located at 903 Blue Jay Street, Kill Devil Hills, NC, 27948 ("Subject Property"), under a policy of insurance that was in full force and effect on all relevant dates, and at all relevant times.

3. In the wake of the incident described below and as a result of a claim made on said policy (which was duly paid pursuant thereto), PNI became subrogated to certain recovery rights and interests of Exotic Imports for monies paid thereunder, including the claims giving rise to the within cause of action.

4. Defendant, Virginia Electric and Power Company d/b/a Dominion Energy North Carolina (a wholly-owned subsidiary of Dominion Energy Services, Inc.) (hereinafter "Vepco"), is a corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business and nerve center located at 120 Tredegar Street, Richmond, VA, which, at all times relevant hereto, was duly authorized and registered to engage in the business of electricity supply in the State of North Carolina.

5. At all times relevant hereto, Vepco, upon information and belief, was in the business of and was responsible for, *inter alia*, designing, installing, servicing, inspecting and maintaining the power substation, power lines, connections, utility poles, fusing and other electrical equipment and facilities located at or near the Subject Property to ensure the reasonably safe provision of electricity.

**JURISDICTION AND VENUE**

6. Jurisdiction is based on 28 U.S.C. § 1332(a)(1) as this action involves a controversy between citizens of different states. Moreover, Defendant regularly, systematically and intentionally conducts its electricity supply business in this state and purposely avails itself of the laws, business benefits and protections of this state; all to a degree that does not offend notions of justice and fair play in this jurisdiction. Finally, the amount in controversy exceeds the jurisdictional threshold of this Court, exclusive of interest and costs, as $875,139.00 was paid by PNI to the subrogor, Exotic.

7. Venue is proper in this district based on 28 U.S.C. § 1391(b)(2) and (3) in that Defendant regularly conducts business within this District and the Subject Property where the fire occurred is within this District.

## STATEMENT OF FACTS

8. On or about July 8, 2019, a fire erupted at the Subject Property causing extensive damages thereto.

9. The fire was caused when a Vepco/Dominion 220V line separated from a pole and fell on the Subject Property due to an apparently old and degraded support hook for the power line failing. The electricity from Vepco/Dominion's line then conducted into subrogor's business starting the fire.

10. As a result of the incident, subrogor sustained damage to its real and business property, as well as business loss and the imposition of additional expenses and hardship besides, in an amount of $875,139.00.

11. To the extent these damages were covered under insurance policies that Plaintiff had in full force and effect at the time with the subrogor, claim monies were paid to the subrogor consistent with their policy's terms and conditions; as a result, Plaintiff has become subrogated to certain claims asserted in this action

12. The incident and consequent damages were directly and proximately caused by the negligence of Defendant as set forth herein.

## COUNT 1 – NEGLIGENCE

13. Plaintiff realleges the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

14. Defendant breached its duties owed to Plaintiff in one or more of the following:

   a. failed to use reasonable and proper care in the inspection, installation and maintenance of the subject power line and its connections;

   b. failed to use reasonable and proper care in the installation and maintenance of the connecting hook that failed in this incident, so as to avoid the risk of damage to the Subject Property;

   c. failed to properly secure the subject conductor in the connecting hook;

   d. failed to perform adequate testing, inspection and maintenance so as to ensure the connecting hook would not fail and the conductor would not fall;

   e. failed to replace the connecting hook that held up the subject conductor with a newer connection prior to July 8, 2019;

   f. failed to properly alert the public, including Plaintiff's subrogor, as to the dangerous propensities of this 220V conductor to fall, remain energized and cause damages;

   g. failed to select and install a proper connection for use on the subject conductor;

   h. failed to use the highest degree of care practicable in the provision of 220V power for electric power supply;

   i. failed to properly install, inspect and maintain the connection used to hold up the subject conductor;

   j. failed to use reasonable and proper care in installing, maintaining, and inspecting this conductor and its connections so that it would not fall to the ground;

   k. failed to use reasonable and proper care installing, maintaining, and inspecting conductors and connections to ensure they were safe for their intended use;

   l. failed to apply proper protective equipment which would promptly de-energize a line for fault as required by the National Electric Safety Code and standards of care in the electric utility industry;

   m. failed to properly train, monitor and supervise employees and/or agents in the proper installation, inspection and maintenance of fittings, connections and other facilities used on subject conductor;

   n. lacked the ability to detect and/or isolate a fault on the subject circuit so as to prevent this loss;

o. failed to perform proper maintenance on the circuit when a fault was or should have been detected on the circuit prior to or on July 8, 2019;

p. failed to have proper safeguards on this circuit so it would de-energize in the event of a downed conductor;

q. failure to have proper fusing on this circuit capable of de-energizing downed conductors in situation like the one that occurred on July 8, 2019;

r. failed to update this circuit design prior to July 8, 2019, to a safe configuration;

s. failed to have adequate line protection in place on the subject circuit;

t. failure to conduct infrared monitoring of connection points on the subject conductor prior to July 8, 2019, to discover damage, overheating and/or evidence of conductor weakness;

u. failure to have an adequate ground protection system in place;

v. failed to meet the requirements of the National Electric Safety Code in the design, installation, inspection and maintenance of this circuit and all equipment in this circuit;

w. failed to meet the standard of care required in the electric utility industry in the design, installation, inspection and maintenance of this circuit and all equipment in this circuit;

x. failed to save the 220V conductor, connecting hook, and other critical evidence and never produced it for inspection – despite being clearly aware of a potential claim - in violation of long-standing NC spoliation law;

y. all of the foregoing being under the reasonable control of Defendant and its employees, agents and those under its direction and control; and

z. all of the foregoing constitute actionable negligence.

15. As a direct and proximate result of such negligent conduct, the subrogor sustained and incurred damage to its property, as well as the imposition of additional expenses and hardship, in an amount in excess of $875,139.00.

16. To the extent these damages were covered under insurance policies that Plaintiff had in full force and effect at the time with the subrogor, claim monies were paid to the subrogor

consistent with its policy's terms and conditions; as a result, Plaintiff has become subrogated to certain claims asserted in this action.

**WHEREFORE**, Plaintiff, Pennsylvania National Mutual Casualty Insurance Company a/s/o Exotic Imports, Inc., respectfully prays the Court as follows:

1. For a judgment against Defendant on its claim for negligence;

2. For damages against Defendant in an amount in excess of $875,139.00;

3. For an award of costs incident to this suit;

4. For a trial by jury; and

5. For such other relief as this Honorable Court shall deem just and proper under the circumstances.

Respectfully submitted, this the 12th day of October, 2020.

                                    **POYNER SPRUILL, LLP**

By:   s/ Daniel G. Cahill
        Daniel G. Cahill
        N.C. State Bar No.: 20887
        dcahill@poynerspruill.com
        P.O. Box 1801
        Raleigh, NC  27602-1801
        Telephone: (919) 783-6400
        Facsimile: (919) 783-1075
        *LOCAL CIVIL RULE 83.1 COUNSEL FOR PLAINTIFF PENN NATIONAL MUTUAL CASUALTY INSURANCE COMPANY a/s/o EXOTIC IMPORTS, INC.*

de LUCA LEVINE LLC


By: <u>s/ Richard J, Boyd</u>
Richard J. Boyd, Jr.
PA ID: 84035
rboyd@delucalevine.com
Three Valley Square, Suite 220
Blue Bell, PA 19422
Telephone: (215) 383-0081
Facsimile: (215) 383-0082
*COUNSEL FOR PLAINTIFF PENN NATIONAL MUTUAL CASUALTY INSURANCE COMPANY a/s/o EXOTIC IMPORTS, INC.*